**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                               :
PATRICK BICKING,               :     CIVIL ACTION
                               :
           Plaintiff,          :
                               :
           v.                  :     NO.  08-1169
                               :
DEITER BROTHERS,               :
                               :
           Defendant.          :
_____:
```

**ORDER**

AND NOW, this      day of             , 2009, upon careful and independent review of the Report and Recommendation of United States Magistrate Judge Henry S. Perkin dated December 29, 2008, it is hereby ORDERED that:

1.      the Report and Recommendation is APPROVED and ADOPTED;

2.      Patrick Bicking shall pay the law firm of Susanin, Widman & Brennan, P.C., on or before January 30, 2009, sanctions in the amount of $5,296.05; and

3.      the Motion of Deiter Brothers for Sanctions is GRANTED and <u>Patrick Bicking v. Deiter Brothers</u>, Civ. A. No. 08-1169, is DISMISSED with prejudice in its entirety.

                                        BY THE COURT:


                                        _____
                                        JAMES KNOLL GARDNER, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                                :
PATRICK BICKING,                :    CIVIL ACTION
                                :
            Plaintiff,          :
                                :
        v.                      :    NO.  08-1169
                                :
DEITER BROTHERS,                :
                                :
            Defendant.          :
_____:
```

HENRY S. PERKIN
United States Magistrate Judge

## REPORT AND RECOMMENDATION

This case was assigned to me by Order of the Honorable James Knoll Gardner on April 10, 2008 to schedule and conduct resolution of discovery disputes.  Pursuant to Judge Gardner's standing Order dated January 2, 2003, all discovery issues are also referred to me for resolution.  In the months following the settlement referral, I attempted to resolve a number of discovery issues between the parties.  The following Report and Recommendation regards the Motion for Sanctions filed on November 20, 2008 by the Defendant, Dieter Brothers ("Defendant"), against Plaintiff, Patrick Bicking ("Plaintiff").  This Motion was supplemented with specific cost information by Defendant on December 5, 2008.  To date, Plaintiff has not responded to the Motion for Sanctions or the Supplemental Motion.

Defendant moves for entry of sanctions in the form of dismissal of the Complaint in its entirety due to the conduct of

Plaintiff during discovery in this matter and monetary sanctions in the amount of $5,296.05.  Defendant argues that this sanction is justified because of Plaintiff's failure to respond to discovery and failure to produce requested documents, Plaintiff's failure to appear for his deposition, and Plaintiff's inappropriate attempts to bolster his case, including making false statements to the EEOC in connection with this case and providing a false and misleading document to Defendant in response to a Court Order.

For the reasons that follow, it is recommended that the Court grant Defendant's Motion for Sanctions, resulting in dismissal of this case, and impose sanctions against Plaintiff in the amount of $5,296.05.

I.    **PROCEDURAL HISTORY**.

Defendant removed the case from the Court of Common Pleas of Lehigh County on March 10, 2008.  Plaintiff alleged wrongful termination of employment in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.  Plaintiff alleged that he was terminated on January 4, 2007, due to his age and his long tenure with the Defendant company, and that Defendant ignored its own policies in bypassing the first two steps of the company disciplinary policy and terminating Plaintiff's employment without providing him with any

warnings.  In response, Defendant stated that Plaintiff was
discharged for using a company vehicle and performing
unauthorized work, in contravention of a written company policy
against outside employment.  Specifically, Defendant contended
that the granddaughter of the founder of the Defendant company
and her boyfriend observed Plaintiff during the weekend of
September 30 through October 2, 2006, performing side work and
using his company vehicle at a private residence in Bethlehem,
PA, in violation of Defendant's policy.  The GPS information for
Plaintiff's company vehicle confirmed that he was in that
location on the dates reported by the witnesses.  When asked if
he was at that location performing outside work, Plaintiff
specifically denied being at that location.  Plaintiff was
immediately terminated as a result of his violation of the
company policy and his false statements.  Mot. for Sanctions, pp.
1-2.  The terms of the company policy are:

    Policy:

       It is the policy of the company to view the
    primary employment obligation of its employees to be to
    Deiter Bros.  In this regard, the holding of second
    jobs by full-time employees is not encouraged and is
    strictly prohibited when the holding of such jobs
    adversely affects an employee's performance or
    conflicts with the company's interest.

    Comment:

    (1) Requests for permission to accept outside
    employment should be submitted in writing to the
    employee's supervisor.  The request should state the
    name and address of the outside employer, the nature of

the job, and the hours of employment.  The supervisor
will forward the request to the General Manager
recommending either approval or disapproval.  The
General Manager will communicate the decision to the
employee and, if it is negative, its reason for the
refusal.

(2) Before requesting to seek or accept outside
employment, employees are cautioned to consider
carefully the demands that such employment will create.
Outside employment will not be considered an excuse for
poor job performance, absenteeism, tardiness, leaving
early, refusal to travel or refusal to work overtime or
different hours.  Should the outside employment cause
or contribute to any of these situations, such outside
employment must be discontinued and, if necessary,
normal disciplinary procedures will be followed, up to
an including termination.

The performance of work directly to the general public
or the Company's Customers which consists of the type
and manner of work provided to the general public and
it's customers by the Company is strictly prohibited.

The use of company vehicles or any other company
property to perform work outside of the company is
strictly prohibited.

**<u>Violating this policy will result in immediate
termination and possible Criminal or Civil action by
the Company.</u>**

Mot. For Sanctions, Ex. A.

On May 15, 2008, pursuant to Judge Gardner's referral

order, a telephonic settlement conference was held with counsel,

and it was ordered that, in anticipation of a June 10, 2008

telephonic settlement conference, information would be exchanged

to aid in the settlement negotiations.  Plaintiff was to provide

Defendant with, among other items, the name and current address

of the friend Plaintiff was visiting/allegedly performing private

work for in September 2006 prior to Plaintiff's termination.

Defendant's counsel was to provide Plaintiff's counsel with

discovery including Defendant's written policy regarding employee

use of company vehicles, whether prior to termination Plaintiff

was permitted to utilize his assigned company vehicle(s) as his

daily transportation to and from his home, any and all GPS data

for Plaintiff's assigned company vehicle(s) for the six month

period prior to his termination, and any statement by the

daughter of Defendant's Vice-President, James Deiter, regarding

her observation of Plaintiff prior to his termination.  In

response to the Order, Plaintiff provided defense counsel with a

letter dated May 28, 2008 from Tim and Dee Mahoney stating:

> I am writing this letter to inform those of
> interest that on a Saturday in the month of September
> 2006, Pat Bicking stopped by for a friendly chat.  We
> discussed future and past vacation spots over coffee
> and donuts.  We talked about mutual friends that we had
> seen recently and how they were doing.  Our talk turned
> to his opinion on the efficiency of a particular model
> of a humidifier/dehumidifier I recently purchased.
>
> I want to state clearly that Pat was not here on a
> service call but a social call and he did not perform
> any work at my home on the day in question.

Mot. for Sanctions, Ex. C.  On June 10, 2008, a telephonic

settlement conference took place but the case was not resolved.

On August 18, 2008, Defendant propounded Requests for

Production of Documents and Interrogatories on Plaintiff.  On

September 19, 2008, Plaintiff's counsel sent a letter to defense

counsel requesting an extension of time to respond to the

discovery requests until October 3, 2008.  Defendant did not

oppose that request.  Thereafter, Defendant's counsel contacted

Plaintiff's counsel numerous times both telephonically and via

correspondence dated October 9, 2008, October 21, 2008 and

October 29, 2008, demanding that the discovery responses be

provided, to no avail.

    Without the aid of the discovery responses, counsel for

Defendant took the depositions of Tim and Dee Mahoney on October

14, 2008.[1]  Mr. and Mrs. Mahoney confirmed that Plaintiff was at

---

[1]Mr. Mahoney testified that Plaintiff came to his house on a
Saturday in September of 2006 and just had friendly conversation.
Mot. for Sanctions, Ex. B, p. 42.  Plaintiff also went to the Mahoneys
at another point in September, 2006, to give them a bid on the job and
on Saturday, September 30, he went to their home to start the job.
Id.
    Mr. Mahoney also testified that:

        Q: Pat Bicking asked you to write this letter
        from May 28th, 2008, saying that on a Saturday in
        September --

        A: Well, he didn't word it.

        Q: What did he say to you?

        A: Basically, he said the day that we, you know,
        had our conversation, I stopped by, we had -- you
        offered me coffee and doughnuts, we talked.

        Q: Right.

        A: He said, just write something to verify that.

        Q: Right.

        A: And that's what I did.  That's exactly what I
        did.

        Q: In the context of him telling you that someone
        saw him doing work at your house and ratted him
        out?

their home on September 30, October 1, and October 2, 2006 as part of a project replacing their residential heating and air conditioning unit, hot water heater and humidifier. Id., Ex. B, pp. 18, 21-25. Plaintiff purchased the products and installed them with a helper. Id. at 21-25. Plaintiff was paid approximately $5600 in cash. Id. at 29.

Following the depositions, Defendant's counsel forwarded a letter to Plaintiff's counsel on October 29, 2008 demanding that the case be withdrawn due to its frivolous nature and inappropriate attempts by Plaintiff to bolster his case,

---

A: In the context of -- yeah, I guess you -- you could say that, yes.

Q: So what I'm trying to say is, he came to you and said, someone ratted me out for doing work at your house. Remember that Saturday I came to talk to you and we had doughnuts? Can you write something up explaining that? That's the conversation?

A: A Saturday. See, I'm not sure what Saturday he stopped by. That's what I'm saying.

Q: Right. But you knew at the time that you wrote this, that he had done work for you --

A: Right.

Q: -- on a Saturday in September --

A: Right.

Q: -- of '06, right?

A: Right.

Id. at 46-47.

including making false statements to the EEOC in connection with this case[2] and providing a false and misleading document to Defendant in response to this Court's May 15, 2008 Order for exchange of discovery in aid of settlement.  Following receipt of defense counsel's correspondence, Plaintiff's counsel forwarded to Plaintiff an authorization to withdraw as counsel and suggested to Plaintiff that his case should be withdrawn in its entirety.  Plaintiff did not immediately respond to his counsel's letter.

Defense counsel previously noticed Plaintiff's deposition to take place in his office on November 6, 2008 at 10:00 a.m.  Present at the deposition were defense counsel, James

---

[2]Plaintiff completed and executed a Discipline Questionnaire for the EEOC on June 3, 2007, which was received by the EEOC on July 6, 2007.  In response to the question, "For what reason(s) do you believe that you were discriminated against because of your race, sex, color, religion, national origin, age, disability, or in retaliation in a manner made unlawful by the statutes administered by the EEOC?" Plaintiff responded:

> In August of 2006 I was talking to the owner of Deiter Brothers, Jim Seiter, Sr. [sic]  We were talking about doing "side" work.  I had never denied doing some work outside of Deiter Brothers.  I had told Mr. Deiter at that time that I would be 50 years old in November and that I wasn't interested in doing "side" work any more.  In September of 2006 I was accused of doing such work.  Mr. Deiter confronted me on a Monday morning in September and said I was doing "side" work.  I told him at the time I was visiting a friend.  I told him the name of the person and exactly what I was doing there.  I never heard anything more about it until I was terminated on 1/4/2007.

Mot. for Sanctions, Ex. A, p. 4.

Deiter, Mickey Thompson, Esquire,[3] and a court reporter.
Plaintiff did not appear for his deposition.  Defense counsel was
informed by Mr. Thompson that Plaintiff was notified of the
deposition via correspondence and voice mail messages.  Also on
November 6, 2008, Defendant's counsel sent correspondence to the
Court outlining the history of this case and requesting relief
that, if Plaintiff refused to withdraw his case, this Court would
enter an order compelling Plaintiff to respond to Defendant's
discovery requests and to submit to a deposition or that
sanctions be entered against Plaintiff for the time and money
spent on the failed deposition.  Plaintiff's counsel filed a
Motion to Withdraw as counsel on November 6, 2008.

        Based on defense counsel's correspondence, a telephonic
conference was ordered on November 7, 2008 to be held on the
record on November 13, 2008 between the Court and both counsel.
At the conclusion of the telephone conference, the Court informed
Defendant's counsel to file a formal motion if he wished to
pursue sanctions against Plaintiff.  Following the telephone
conference, the instant Motion was filed on November 20, 2008.
On December 2, 2008, Plaintiff's counsel forwarded a copy of a
consent to withdraw as counsel executed by Plaintiff on November
29, 2008.  Plaintiff's counsel supplemented the instant Motion on

---

        [3]Mr. Thompson is a representative from Plaintiff's counsel's
office.

9

December 5, 2008 with detailed cost information.

**II.     STANDARD.**

   Courts may dismiss actions as sanction against a party who fails to obey a scheduling or pretrial order or who fails to appear at a scheduling or pretrial conference. FED. R. CIV. P. 16(f), 37(b)(2)(C).  Rule 37 provides that:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> > An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

FED. R. CIV. P. 37(b)(2)(C).  Rule 37 should not, however, "be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 640 (1976)(quoting Societe Internationale v. Rogers, 357 U.S. 197, 212 (1958)).

   The United States Court of Appeals for the Third Circuit ("Third Circuit") has stated that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff."

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 866 (3d Cir. 1984)(quoting Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 342 (3d Cir. 1982)).  Under Poulis, a court may enter default against a party as a sanction after considering the following six factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) whether the party has a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of all of alternative sanctions; and (6) the meritoriousness of the claim or defense.  747 F.2d at 867-68.  It is not necessary that each factor be satisfied for a sanction to be appropriate.  Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003); Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir. 1992); Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), cert. denied, 488 U.S. 1005 (1989).  These factors are to be "weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited."  Poulis, 747 F.2d at 870.

11

III.     **DISCUSSION**.

   A.     **Application of the Poulis Factors**.

      1.     Plaintiff's Personal Responsibility.

In the present action, Plaintiff never responded to Defendant's discovery requests or notices of deposition. Plaintiff's counsel also admitted that Plaintiff failed to respond to counsel's attempts to reach Plaintiff for his deposition.  Plaintiff is therefore personally responsible for his failure to respond and move this case forward.

      2.     Prejudice to the Adversary.

There has been monetary prejudice to Defendant by Plaintiff's conduct in this matter.  The Third Circuit has noted that prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994).  In addition to the instant Motion, Defendant's counsel prepared numerous letters to Plaintiff's counsel and this Court regarding overdue discovery which was never answered.  Defendant's counsel was also forced to take the Mahoney depositions without the benefit of any discovery.  In addition, Defendant incurred additional expenses when Plaintiff never appeared for his deposition.  Defendant encountered lack of cooperation from the Plaintiff where the

12

Plaintiff should cooperate under the Federal Rules.  <u>Poulis</u>, 747 F.2d at 868 (citing <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633 (1962)).

       3.     <u>Plaintiff's History of Dilatoriness.</u>

Plaintiff has been dilatory throughout this litigation. The Third Circuit has stated that "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." <u>Adams</u>, 29 F.3d at 874.  Plaintiff failed to respond to Defendant's written discovery propounded over four months ago and Plaintiff did not appear for his deposition.  Plaintiff has offered no explanation or excuses for his failures to respond to discovery or his attorney.  Plaintiff's conduct has been dilatory.

       4.     <u>Whether the Conduct of the Party or His Attorney Was Willful or in Bad Faith.</u>

Under this factor, the District Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." <u>Adams</u>, 29 F.3d at 875 (internal quotation marks and citation omitted). Generally, "[w]illlfulness involves intentional or self-serving behavior." <u>Id.</u>  Plaintiff's allegations and statements, under oath, to this Court and the EEOC, are textbook examples of willful, bad faith behavior.  Although Plaintiff's counsel's conduct cannot be characterized as willful or in bad faith,

13

counsel did not aid Defendant's counsel or this Court by alerting us about his communication issues with Plaintiff until a significant period of time lapsed.  Despite counsel's failure to communicate, counsel's motion to withdraw representation and the evidence show that Plaintiff alone is responsible for his bad faith in this case.

> 5.   <u>Effectiveness of Sanctions Other Than Dismissal.</u>

The Third Circuit has held that "[w]hen a Plaintiff fails to prosecute his action, outside of dismissal of the action, the Court cannot envision a sanction that would be appropriate." <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262 (3d Cir. 2008).  Although this Court also recommends that monetary sanctions should be imposed against Plaintiff, those sanctions alone are insufficient to alert Plaintiff that his conduct will not be tolerated by this Court.  Furthermore, Defendant should not be forced to defend an unmeritorious case.  Plaintiff's lack of veracity, his failure to respond to discovery and his failure to appear for his deposition warrant dismissal of this action.

> 6.   <u>Meritoriousness of the Claim.</u>

The final <u>Poulis</u> factor for this Court to examine is whether a claim appears to be meritorious.  The standard for meritoriousness is whether the allegations of the pleadings, when considered at trial, "would support recovery by plaintiff or would constitute a complete defense." <u>Poulis</u>, 747 F.2d at 870

14

(citations omitted).  Plaintiff has not been truthful to his counsel, to the EEOC, and to this Court.  The Mahoney depositions and other evidence do not support recovery by Plaintiff, as there is no evidence of age discrimination.  In fact, there is only evidence that Plaintiff has been dishonest in bringing this lawsuit.

**B.      Balancing the <u>Poulis</u> Factors.**

Finally, the foregoing factors are to be "weighed by the district courts in order to assure that the 'extreme end' sanction of dismissal or default is reserved for the instances in which it is justly merited."  <u>Poulis</u>, 747 F.2d at 870.  In this case, the balance of factors weigh in favor of dismissal of this case.  Plaintiff's unmeritorious allegations in this case warrant dismissal by themselves.  Added to those allegations, Plaintiff's violations of the federal rules and this Court's scheduling and discovery orders have been persistent and flagrant and resulted in significant delay and waste of judicial resources without justification.  Thus, the facts of this case comply with the requirements of <u>Poulis</u> regarding dismissal for failure to comply with rules and orders of court.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this 29th  day of December, 2008, IT IS RESPECTFULLY RECOMMENDED that the Defendant's Motion for Sanctions should be GRANTED, sanctions in the amount of $5,296.05 should be imposed against the Plaintiff, and this case should be DISMISSED with prejudice.

BY THE COURT:


/s/ Henry S. Perkin
HENRY S. PERKIN,
United States Magistrate Judge